DOMENGEAUX, Judge.
Hilbert P. Nero and Louie [Loudie] Car-riere Nero, plaintiffs-appellants, filed suit in tort for the alleged wrongful death of their minor unemancipated son, Kermit Paul Nero, who died as the result of the collapse of an oilfield workover drilling rig on May 30, 1966. Young Nero, at the time of the accident, was employed by J. I. Roberts Drilling Company as a rough neck, and was engaged in this occupation when the accident occurred.
Made defendants were Southern Natural Gas Company, the owner of the well site; James Goodwin, drilling foreman for Southern Natural Gas Company; Ideco, a division of Dresser Industries, Inc., the manufacturer of the drilling rig in question; and W. W. Patterson, a serviceman or mechanic for Ideco. Southern and Goodwin filed answers generally denying any responsibility for the accident, contending that the rig collapsed because of a fortuitous event, namely an unusual gust of wind and alternatively if negligence was involved, said negligence was on the part of the Roberts company, Ideco and Patterson, or either of them. They further impleaded the Roberts company and its liability carrier The Travelers Insurance Company in a third party action for full indemnification from Roberts and Travelers for any judgment rendered against them based upon an indemnification and hold harmless agreement executed between Roberts and Southern. Ideco and Patterson answered, disclaiming any responsibility for the accident. The Travelers Insurance Company, who also furnished workmen’s compensation insurance to the Roberts company, and who paid the sum of $5,100.00 to plaintiffs under a workmen’s compensation settlement for the death of Kermit Paul Nero, intervened herein by virtue of its subrogation rights and prayed that it be reimbursed, by precedence and priority, the sum paid by it in the event that plaintiffs should recover in these proceedings.
Southern filed a motion for summary judgment and was dismissed from this suit prior to trial inasmuch as the decedent Kermit Paul Nero was an employee of J. I. Roberts Drilling Company which had contracted with Southern for the remedial work on the well site in question and which remedial work was a part of the usual trade, business and occupation of Southern and therefore young Nero, being an employee of Roberts, was precluded from any recovery in tort against Southern. The summary judgment in favor of Southern was not appealed.
After trial on the merits the district judge held in favor of the defendants and dismissed plaintiffs’ claims, and also the petition of intervention filed by Travelers with prejudice and at plaintiffs’ costs. Plaintiffs’ and intervenor Travelers have appealed to this court.
The issues presented are: 1) Did the trial court commit manifest error in failing to find that Ideco, Goodwin and Patterson or either of them were guilty of negligence, and, 2) Did the trial court err *130 in failing to apply the doctrine of res ipsa loquitur.
The decedent Kermit Paul Nero was employed as a roughneck by J. I. Roberts Drilling Company. Southern Natural Gas Company was the owner of an oil well designated as A. R. Albritton No. 2 located in Vermilion Parish, Louisiana and entered into a contract with J. I. Roberts Drilling Company for remedial or workover work to be performed on the well. The rig to be employed in this work was owned by the Roberts Company and had been sold to it by the manufacturer Ideco, In July of 1962. It was a portable type truck-driven unit lifted into place hydraulically and secured by a series of guy wires attached to anchors. The site of the well was in a marshy area. After the rig was installed and operative for some five days, and on May 30, 1966, at approximately 4:00 A.M., while tubing was being pulled out of the hole, the rig collapsed, causing stacked pipe to pin young Nero to the platform floor, causing his death. Two anchors had been pulled out of the ground.
From the evidence and testimony adduced at the trial the District Judge concluded that the accident was not caused by any fortuitous event. We agree with this conclusion inasmuch as the record shows only minor unimpressive and inconclusive reference to .a gust of wind which preceded the toppling of the rig.
It is evident from a review of the testimony that the responsibility for installing the workover rig was that of the decedent’s employer, the Roberts Company. The trial judge concluded that the facts and circumstances in this case strongly indicate that the negligence of others who were not sued herein may have been the proximate cause of this accident. In that connection, no executive officers of J. I. Roberts Drilling Company were sued, neither were the tool pusher or other members of the Roberts company crew sued.
A thorough review of the record satisfies us that the plaintiff has failed to prove by a preponderance of the evidence any negligence on the part of any defendants in this case, namely Ideco, Goodwin or Patterson.
Goodwin, as aforesaid was employed by Southern as a drilling foreman and was at the well site when young Nero was killed. He was in charge of the hole, i. e., it was his decision as to when to place pipe into the hole and take it out but he was not in charge of nor did he have any responsibility for the rigging and installation of the rig itself, nor any knowledge of any improper installation of the rig by others.
Patterson was a serviceman for Ideco on the day of the fatal accident. He was present at the site for about 30 minutes when the rig was being installed. We readily conclude from his testimony and other substantiating testimony that he had no responsibility in the setting up of the rig. He actually was on the site by coincidence, his presence there being occasioned while attending to other business.
M. C. Nash, the tool pusher for the Roberts company who, as aforesaid, was not sued herein, had supervision and control of the rigging up procedures and of the placing of the anchors to stabilize the rig through the guy wires. The rig was installed by Nash and his fellow crew members.
The rig in question was some four years old and as aforesaid, was manufactured by defendant Ideco. Ideco supplied the guy wires with the rig but did not manufacture nor furnish the anchors used in connection with such an operation. There was no evidence of any defect in the rig itself or in the guy wires. Although the record is sketchy and inconclusive as to the actual cause of the collapse of the rig, should we allow -ourselves the luxury of speculation, it appears that the anchors gave way as the result of not being properly embedded *131 in the marshy terrain, but even so, neither Ideco, Goodwin nor Patterson had any responsibility in connection with the installation of the anchors nor any knowledge that the anchors were improperly embedded; nor should they have had, under the facts of this case, any such knowledge.
The trial judge correctly summarized the lack of responsibility for this accident on the part of the three defendants as follows:
“ * * * Plaintiffs have not established by a preponderance of the evidence negligence on the part of Ideco or W. W. (Pat) Patterson. Mr. Patterson, the service manager for Ideco, although present when the rig at the well site was placed into position, had nothing to do with that operation. He states this and is corroborated in this respect by Mr. Huey Harris and Mr. Milan Nash, both employees of J. I. Roberts Drilling Company. Nor does the evidence establish the allegations that Patterson had any knowledge that the anchors were improperly placed or the rig improperly anchored or that there was improper supervision of the rigging-up operations, including anchoring, placing of guy wires, etc.
“As to Ideco, again the evidence is also insufficient to establish negligence. Ide-co did manufacture the rig but did not supply the 4 anchors to which the guy wires were attached. Ideco did not have control over the rigging-up operations or any operations at the time of the accident.
“I also do not believe that the plaintiffs have established by a preponderance of the evidence negligence on the part of James Goodwin. Mr. Goodwin was not present at the rigging-up operations so can not be held accountable for improper installation at that time. He was an employee of Southern Natural Gas Company, one of the original defendants which was dismissed on Motion for Summary Judgement. He was the drilling foreman and I think the testimony reflects that he was actually in charge of the rig and had supervision over the tool pusher and when, for example, pipe is to be removed from the hole he tells him to do it. However, the actual performance of this task is left to the tool pusher.
“Mr. Goodwin was acting as drilling foreman for 5 days prior to the accident but the evidence just does not show negligence on his part which was the cause of the accident and death of the young Nero boy * * *
We find no merit to appellants’ contention that this case should be governed by the doctrine of res ipsa loquitur. This doctrine will not apply unless the facts and circumstances indicate that the negligence of the defendant, rather than the negligence of others is the most plausible explanation of the accident. Pilie v. National Food Stores of Louisiana, 245 La. 276, 158 So.2d 162. As indicated by the trial judge, with whom we concur, the facts and circumstances in this case strongly indicate that the accident herein was caused by others who were not made parties to this suit.
For the above and foregoing reasons we conclude that the trial court was correct in dismissing plaintiffs’ petitions and the petition of intervention of The Travelers Insurance Company, and accordingly, the judgment of the trial court is affirmed. Costs of this appeal to be assessed against appellants.
Affirmed.