425 So.2d 913 (1983)
Oliver P. SCHULINGKAMP
v.
The BOARD OF LEVEE COMMISSIONERS OF the ORLEANS LEVEE DISTRICT, et al.
No. CA 0124.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 1983.
Richard J. McGinity, McGinity & McGinity, New Orleans, for defendant-appellant Bd. of Levee Com'rs.
James L. Bates, Jr., New Orleans, for defendant-appellant Osmond J. Young.
Paul A. Bonin and Carla A. Failla, New Orleans, for plaintiff-appellee.
Before SCHOTT, CIACCIO and WILLIAMS, JJ.
*914 SCHOTT, Judge.
Defendants, Osmond J. Young, and the Board of Levee Commissioners of the Orleans Levee District, have appealed from a judgment in favor of plaintiff, Oliver P. Schulingkamp, for $7500, based on the diminution of the value of plaintiff's property as a result of the construction of a building by Young on the neighboring property. The issue is whether there is any legal basis for the award under LSA C.C. Art. 667 or 2315.
The subject property is owned by the Levee Board and is located on Lake Pontchartrain at West End in the City of New Orleans. In 1973 plaintiff purchased the leasehold rights to a boat slip and a boathouse from a previous tenant of the Levee Board for $14,000. Under his lease, he was obligated to pay $500 per year rent to the Board. About two years later plaintiff received a notice from the Levee Board that it was removing a restriction against using the facility as a domicile and plaintiff's lease was amended accordingly. Plaintiff converted the boathouse into an apartment for his residence at an expense of $45,000. Under the terms of the lease it was necessary for him to obtain the permission of the Levee Board to construct these improvements and such permission was obtained.
In the meantime, the lessee of the adjoining property, Osmond J. Young, had been operating a business of boat sales and boat repairs on his site since 1959. In March, 1978, pursuant to permission by the Levee Board he began to construct a 2-story building on his property. Its location would be, and now is, some 34 feet from the balcony of plaintiff's building, so that plaintiff now has a view of the wall of the building instead of the oak trees and park he could formerly view. Both of the properties are zoned light industrial and Young's building conforms to the zoning.
Plaintiff sought a preliminary injunction to prohibit the construction of the building when Young first began, but the trial court denied this injunction stating that Young had a right to construct his building and plaintiff constructed his own residence in this commercial area at his own peril. However, after the building was completed the court awarded plaintiff damages against Young based on C.C. Art. 667. The Levee Board was also cast in judgment on the basis that it violated some duty to warn plaintiff that Young was planning to construct the building when plaintiff applied for permission to build his residence.
Art. 667 does not support the judgment against Young. Unless Young's use of his property constituted ultra hazardous activity it was incumbent upon plaintiff to prove negligence on Young's part in order to recover. Charia v. Stanley, 359 So.2d 291 (La.App. 4th Cir.1978). Plaintiff proved neither of these elements. Furthermore, a reading of Art. 668 with 667 clearly precludes plaintiff from recovery under the circumstances of this case. Those articles provide as follows:
"Art. 667. Limitations on use of property.
Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
"Art. 668. Inconvenience to neighbor.
Although one be not at liberty to make any work by which his neighbor's building may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors's [neighbor's] house because this act occasions only an inconvenience, but not a real damage."
The damage occasioned to plaintiff's property was precisely the loss of the view over the park resulting from the construction of Young's building. While the trial judge attempted to isolate plaintiff's damages as a reduction in the resale value of his *915 property, aside from the mere inconvenience of losing his view as a result of Young's work, the testimony of plaintiff's realtor at the hearing on the injunction was to the effect that only the asthetic value of plaintiff's house was diminished and he equated that loss with the loss of the view from plaintiff's balcony.
As to the Levee Board, the trial court found that it breached some duty to warn plaintiff when he began construction of his residence that Young was planning to construct a building on his property. The flaw in this theory is that the Levee Board had no such duty. As previously stated this property was zoned light industrial and Young had a perfect right to use his property in conformity with that zoning. The record shows that Young had spoken to someone with the Levee Board and advised that he intended to demolish an old building which was on the site and construct a new one and that this conversation took place before plaintiff applied for permission to build his residence. This hardly translates into a duty on the Board to recall and report to plaintiff what might be contemplated by Young at some future date. Furthermore, if any duty existed it was upon plaintiff to ascertain the zoning of the property and to determine what might be constructed by his neighbor at some future date before he constructed his own improvements. He testified that he had no guarantee whatsoever from the Board that there would be no commercial construction on Young's property but he "assumed" that there would not be. Plaintiff was aware long before he built his own improvements that commercial activity was going on in the neighboring property, including boat sales and repairs consisting of painting, sanding and welding activities. Thus, there was no reasonable basis for his assumption.
Plaintiff argues that the Levee Board as the common lessor of both tenants had some sort of a special duty to protect him from making improvements which might be inconsistent with objectionable future improvements on neighboring property. Plaintiff pays the Levee Board $500 a year and gets exactly what is bargained for under the lease, namely, the water bottoms for use as a marine facility. The Levee Board guaranteed plaintiff peaceable possession of the premises but it had no duty to advise him as to what uses of neighboring property are permitted under the light industrial zoning which prevails. Although the lease required plaintiff to get the Board's approval in advance of improvements being made to the property, we cannot draw the slightest inference or insinuation from this provision that the Board was obliged to warn plaintiff of possible construction on the neighbor's property, knowledge of which was charged to plaintiff in the first instance. Finally, it is significant that the zoning ordinance of the City of New Orleans prohibited plaintiff from constructing his residence in this light industrial area. An official of the City explained that the City does not enforce this provision but simply defers the matter to the Levee Board. Nonetheless, this prohibition in the zoning ordinance was still another caveat which plaintiff ignored when he constructed his residence. No legal principle gives him the right to recover from the Levee Board or anyone else for his own decision to proceed with his construction under these circumstances.
Accordingly, the judgment appealed from is reversed and set aside and there is judgment in favor of defendants, Osmond J. Young and the Board of Levee Commissioners of the Orleans Levee District, and against plaintiff, Oliver P. Schulingkamp, dismissing his petition at his cost.
REVERSED AND RENDERED.