535 So.2d 525 (1988)
Cynthia Martin BROWN
v.
OTIS ELEVATOR COMPANY, et al.
No. 88-CA-0611.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 1988.
Rehearing Denied January 18, 1989.
John K. Leach, Christovich & Kearney, New Orleans, for appellant/defendant.
Clyde A. Ramirez, Ivan D. Warner, III, Patricia D. Miskewicz, New Orleans, for appellee/plaintiff.
Before SCHOTT and LOBRANO, JJ., and PRESTON H. HUFFT J. Pro Tem.
PRESTON H. HUFFT, Judge Pro Tem.
Cynthia Martin Brown brought this action to recover damages claimed as a result of having been trapped for approximately forty-five minutes in a stalled elevator in the Freeport McMoRan Building located at 1615 Poydras Street in the City of New Orleans. Plaintiff's petition names as defendants Otis Elevator Company (sometimes referred to hereinafter as "Otis") and its insurer Liberty Mutual Insurance Company (sometimes referred to hereinafter as "Liberty Mutual"). Plaintiff effected service only upon Liberty Mutual pursuant to the Louisiana Direct Action Statute. Otis *526 made no appearance in this matter. The trial judge tried the issue of liability on January 13, 1988. Defendant moved for a dismissal of plaintiff's claims upon the close of plaintiff's presentation which motion the trial court denied. The trial judge took the case under advisement upon the conclusion of the trial, and rendered a judgment on January 20, 1988, and an amended judgment on January 29, 1988, in favor of plaintiff and against Liberty Mutual in the principal amount of SEVEN HUNDRED FIFTY-FIVE and 00/100 ($755.00) DOLLARS, together with interest from the date of judicial demand and all costs. The court issued its reasons for judgment on January 29, 1988. Liberty Mutual has appealed the trial court's decision.
The issues before this Court are whether the facts support plaintiff's claims for recovery under theories of strict liability, res ipsa loquitur or negligence.
In the late afternoon of November 19, 1985, Cynthia Martin Brown entered the Freeport McMoRan Building in order to pay her rent on the seventeenth floor. Plaintiff entered one of the building's elevators with her two children, respectively aged 4 months and 19 months. The elevator stopped between the seventeenth and eighteenth floors. When the elevator doors failed to open, the plaintiff pressed the alarm button, which summoned a building security guard. The security guard told plaintiff to press the button for the seventeenth floor again. Plaintiff did so, but the door again failed to open. The guard then told plaintiff to try other buttons to see if the door would open; she did so, but nothing happened.
Eddie Andrews at the lobby desk then called Otis Elevator Company, the maintenance contractor for the elevators located in the Freeport McMoRan Building. Otis dispatched Robert Beall to investigate the problem. When Mr. Beall arrived at the building, he confirmed the complaint with one of the security guards. He then went to the equipment room to determine the problem. In doing so, Mr. Beall used a portable computer terminal that plugs into the elevator machinery. The computer terminal indicated that the emergency stop switch inside the elevator had been activated. No other problem with the elevator machinery was identified, found or repaired. Therefore, Mr. Beall simply bypassed the emergency stop switch, which resolved the problem and allowed the car to proceed to the eighteenth floor, where the doors opened and the passengers were released. Mr. Beall then confirmed by physical inspection that the emergency switch inside the elevator had been engaged. He then deactivated the switch and the elevator operated normally.
Mrs. Brown and her two children were confined in the elevator for about forty-five minutes, during which time she became panicky and scared, and threw up; her children were screaming and crying, which further upset her. Plaintiff later suffered headaches and an upset stomach for which she saw Dr. Henry Evans who prescribed medication for her to rest. She saw him about four more times.
Mr. Beall clearly stated at trial that the activation of the emergency switch, which could only be activated by a passenger inside the elevator, was the only problem found and corrected and that if any other problem had existed, the elevator would not have run after the emergency stop switch had been bypassed. He also clearly established that the elevator had operated correctly once the emergency switch had been physically disengaged and the by pass had been deactivated. Mr. Beall's testimony is clear and is the only evidence produced at trial as to the possible cause of this incident.
This Court recently had the occasion to consider the theories of recovery for negligence, strict liability and res ipsa loquitur from the elevator maintenance contractor by someone who had been trapped in a stalled elevator. In Wilson v. Hibernia National Bank, 517 So.2d 1206 (La.App. 4th Cir.1987), writ denied, 520 So.2d 425 (La.1988), the plaintiff claimed damages for being trapped in an elevator that had stalled as a result of the failure of a relay switch. The facts established that the maintenance contractor could not have reasonably *527 anticipated when the switch might fail. This Court upheld the decision of the lower court which denied recovery under the theories of strict liability, res ipsa loquitur and negligence.
In the instant case, Liberty Mutual's witness, Mr. Beall, an employee of Otis, presented the only testimony concerning the cause of the stalling of the elevator the activation of the emergency switch. Mr. Beall's uncontroverted testimony established that the elevator would not have stalled but for and until activation of the emergency switch from inside the elevator. Such circumstances cannot support the plaintiff's claims of recovery.
As this Court has recently stated in Wilson, supra, the standard of care imposed upon Otis as a maintenance contractor is reasonable care in the performance of services under the contract with the building owner. The facts of the instant case do not show that Otis violated this standard of care. See also Austin v. Otis Elevator Company, 336 So.2d 914 (La.App. 4th Cir.1976); Campbell v. Otis Elevator Co., 808 F.2d 429 (5th Cir.1987).
As this Court also noted in Wilson, supra, the imposition of strict liability under LSA-C.C. art. 2317 applies only when the plaintiff proves that the defendant had the care and custody of the thing which caused the plaintiff's damages. Loescher v. Parr, 324 So.2d 441 (La.1975). The mere existence of a service contract does not suffice to establish that the maintenance contractor had custody and control of the elevator at the time of its failure. Hester v. Montgomery Elevator Co., 392 So.2d 155 (La.App. 1st Cir.1980). Again, in the instance case, the record does not reflect any evidence that Otis had custody and control of the elevator when it stalled.
Finally, as this Court noted in Wilson, supra, the doctrine of res ipsa loquitur may be used to shift the burden of proof to defendant when: (1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; (2) the defendant had exclusive control over the thing causing the injury; and (3) the circumstances are such that the only reasonable and fair conclusion is that the accident resulted from a breach of the defendant's duty. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972). In order for the doctrine to apply, the plaintiff must establish facts that warrant the inference that the plaintiff's injury would not have occurred absent the defendant's negligence. Thus, the plaintiff must bear the initial burden of proof. Toussant v. Guice, 414 So.2d 850 (La.App. 4th Cir.1982). The record does not support any inference that plaintiff's injury would not have resulted absent the defendant's negligence. Plaintiff did not present any fact that would contradict Mr. Beall's finding that the elevator stalled when the emergency stop had been activated inside the elevator. Furthermore, the record does not establish that Otis had exclusive custody and control of the elevator. Thus the doctrine of res ipsa loquitur cannot apply to the facts presented.
Accordingly, the judgment of the trial court in favor of plaintiff and against defendant Liberty Mutual is reversed. Costs assessed to plaintiff/appellee.
REVERSED.